Good morning counsel and Mr. Borazon, you may proceed. My name is Kevin Borazon, I do represent CACH LLC, a appellate in this matter. We are here as you know from our review of the briefs that is our belief the trial court's order should be reversed, that's the order dismissing our complaint with prejudice. The reason we dismiss with prejudice is for one issue only, is that the trial courts believe that the statute of limitations period commences on the date of last use of the credit card rather than the date of last payment towards the balance of the card. Is there a definition of use in the small print on the agreement that's on the back of most of the credit card statements? Your Honor, that's a great question. I cannot speak to the general I guess definition of use as general credit card agreements as it stands. Well I was asking about this one, I didn't. Sure, thank you. Your Honor, I frankly don't have an answer to that, however, it is common knowledge, I mean even the sophisticated debtor understands that use of a credit card means the I guess spike of a credit card would constitute the use that is. Well how is it making a payment a use of the card? Well Your Honor, the using of the card is to purchase something, something of worth so to speak. And even if, as Your Honor indicated, that a payment towards would be the date of the last use, then here there would be essentially no issue on appeal because then the date, the commencement date, the statute of limitations period would then be the date of payment. The same date. Thank you, Your Honor, the same date. So then our argument essentially would be made for us in that the trial court would have then definitely failed to do what was in the right order. I know this is not the precise point that's raised, but I was curious in going through the record and the facts, how is it that in 2013 this amount of 6,000 plus is considered a loss by the company you bought it from, but a year later you reactivate that debt? I suppose that's an IRS issue as opposed to my issue, but just curious how that happens or does that play any part in this? Your Honor, to answer your question, after the debt is charged off by the bank itself, Citibank in this instance, CACH purchases all right title interest in that debt, and part of that is the collectability of the debt. After a debt is charged off, it does not disappear, and from my knowledge of the IRS code, which is very limited, when it is charged off, that is again, as Your Honor reflected, a tax issue. I would say it's a taxable event, but I guess. It's more of a business issue than a tax issue. Thank you, and I think that's a fair way to describe it. So in this instance, however, the reason CACH was collecting upon the ultimate amount due, the total debt, was because when they were assigned the debt and purchased it, it was all right title interest in the account itself, the credit account, which includes the debt and the collection upon the debt. And after the last payment towards the total amount owed on the debt was submitted, that being August of 2015, then the commencement date started then. So part of your argument is that you say the partial payment was told the statute of limitations. Yes, yes. So interchangeably, I'm using commencing and told, I guess, interchangeably. And for clarification, the ultimate rule is that unless the statute of limitations is otherwise told, then it is five years. And from this point in this case, the payment told the statute of limitations. So thereby, in essence, it started on that specific date that the payment was made. And this is supported, the fact that it is commenced or told, I guess, same overall meaning in this instance. That's supported by a longstanding case law in Illinois. St. Francis Medical Center versus Vernon, I think, uses that. Basically states the same thing. Correct, Your Honor. And from that, it goes forward many years. It started in the 1930s in Reagan State and Swift. 1975, Department of Mental Health versus Mitchell, so on and so forth, all the way up the ladder. Even the Northern District of Illinois, as well as several other federal districts, utilizing Illinois law and interpreting the case under Illinois law has helped accordingly. And now what you won't find in any of this case law, in any of the current law that is relevant and pertinent to this issue, you won't find the LE's UCC-based arguments in there regarding court and statute. And, in fact, you won't find that applicable here because that is only with regard and really undermining, an attempt to undermine, the ability to make an account stating claim in general, which the order here found that the account stating claim was accurate in the make. By denying the LE's motion to dismiss for the ability to make an account stating claim in general. Yes, Your Honor. Looking at the date of filing, just for a moment, is it true that the complaint actually has two dates on it? A July date and an August date? Your Honor, the complaint that we had, it is August 10th, 2017 is the date of filing. And when, in the brief itself, there was a discrepancy between a July and August, I believe that that was a typo on either party's behalf. However, regardless, the applicable date, even if it was July, or the August 10th as the date was filed, holds, then the argument is the same from CSH's standpoint in that the five-year session limitations period was still met. Which date are we using? August 10th, 2017. So the last payment was made on August 24th, is what you're saying? Yes, Your Honor. So whether it was August or July, does it matter? Correct. It doesn't matter in terms of the overall argument and the actual, you know, the reason the underlying court, the trial court, was wrong in its holding. It's a legal issue here. The issue here is as simple as did the trial court get the law correct, and they did not. And what you won't find in Appleby's brief is any law, any precedent, supporting the conclusion in the trial court's order, that being that the date of last card use holds and is applicable for the commencement of the statute of limitations date. And that's because that's just not the law in Illinois. And that is laid out in our brief, as Your Honor referenced, going back all the way to the beginning half, beginning years, decade of the 1900s. This is a long-standing Illinois law that has not been overturned. And in fact, any attempt to undermine this by Appleby, again, is only related to the capability of making an account-stated claim, which is not an issue here. Appleby did not make a cross-appeal for that, the first portion of the order. And even so, even if, as our brief goes on to explain that, even if the UCC, the court of satisfaction, the issues of bona fide dispute are applicable here, which is our position, it is not applicable here, given the order. However, even if it is, Appleby still failed to meet its burden by establishing the mutuality of intent, which the Supreme Court in Sycheck v. Lupa, the Supreme Court of Illinois in 2013, held that this mutuality of intent needs to be established and proven by the movement, in that case, for a sum or judgment standard, for the bona fide dispute to even be considered racial, which it is not here. And as Your Honors are aware, this was under the guise of a motion to dismiss. So at the very least, there was a question of fact regarding Citibank's intent or subjective belief regarding the memo on the check. Was that issue raised before Judge Tracy? Your Honor, the record does not reflect whether that issue was raised or not. The record is devoid of any reference to Citibank's subjective understanding of the memo. And Appleby will and has emphasized at great length what her understanding or her belief of the memo line on the check, the partial payment, meant. It is, you know, her belief that she disputed the debt all along, that that would constitute the final payment, and therefore the debt was essentially wiped away based on her partial payment belief. Now, look, Your Honors, our perspective and from the case law shows that this issue was raised the first time on appeal. Right. And although this Court can consider new issues on appeal, it's only if all the facts in the record establish that there's enough to decide this issue. And the record is devoid of any UCC-based arguments. How about the argument that he makes about the interest in saying that, you know, this is a claim for interest only? And, Your Honor, that, again, is not an issue that is relevant to this appeal. The appellee, again, made the argument in the underlying briefs, the motion to dismiss, in the record, in relation to CCH's capability of pleading an account-stated claim. And that's you can see this argument being made. But was there more than interest due on this debt? Your Honor, there was interest due on the debt because of underlying charges. And as any debtor would know, the way the credit card works is if you don't pay off the entire balance, interest will continue to accumulate. And the debtor here let the interest accumulate and received statements throughout a matter of years. And then suddenly, when she believed that this was enough, that her debt wasn't, her payment for the debt was enough, that this constituted satisfaction, there's an important satisfaction situation here. And that is not played out in the record at all. In fact, the only mention, again, with regards to her subjective belief and her affidavit regarding the final payment, was with respect to the ability to plead an account-stated claim, which the court below denied, denied this argument. So that's not an issue on appeal. And this relates, actually, to a case that we cited in our brief. It's analogous to the Department of Mental Health v. Mitchell. This is a Fifth District case from 1975. In that case, the debtor claimed that he paid enough to satisfy the debt. And his last payment toward the debt, however, the court held, did indeed toll the statute of limitations. Because, as the court held there, the word due means unpaid. There is an amount due, whether the interest stemming from concrete charges in use of the card going forward, there is an ultimate balance, an unpaid amount due. And in Mitchell, as in here, the debtor submitted payment towards that ultimate amount due. And now, whether there is a subjective belief about what the indication, the court indication of the memo line meant, which, again, it is our position that at the very least, there is a question of fact because of the presence or the lack of clarity of the check in and of itself. It's hard to make out what is actually written on the memo line. So if we find that the statute, that the court was incorrect on determining when the statute of limitations ran, then you're saying there is sufficient issues of fact for the trier of fact to send it back to make a determination. Absolutely. Absolutely, Your Honor. Yes. And the defendant's payment here on the check, whether it was for what she believed was the full amount that she thought she owed or the actual full amount, which was stated on many statements throughout years, whether there was an omission or her partial payment was an omission of and an acknowledgement to the fact that the entire debt to City of Bay was indeed due and there was an actual existence of a debt. And her partial payment towards that debt was acknowledgement of the amount owed. But that, again, is not an issue here on the appeal. The issue is whether that partial payment on that date in August of 2012 told or was the operative date for the commencement of statute of limitations. And the underlying court simply got the law wrong on that issue because as long-standing case law in Illinois holds, the date of partial payment is the operative date. Thank you so much for your time, Your Honor. We do request that the order be reversed. You'll have an opportunity to reply if you choose. Thank you very much. Reversed and remanded, correct? Yes, sir. Thank you so much. Mr. Roser? Good morning. May it please the Court, my name is Ron Roser. I have the privilege this morning of representing the defendant, appellee in this case. I think in part, well, let me begin by I think the dates are important in this matter. The last use of this card was made in November 2010. The last payment is August 21, 2012. And the suit is filed, as you heard, in August of 2017. The question becomes before you is what is the applicable law and how is it applied to these particular facts? In part, I think this case has gone a little askew. If we look at the issues raised in the brief of the appellant, we find that the issues are only as to the statute of limitations. They have not raised an issue, a justiciable issue, as to partial payment, final payment. They have not gone into that. They want to say, and want you to hold, that payment is the operative issue here. Payment resets or tolls the period of limitations. Doesn't it? No. Why not? Because there is a difference, Your Honor, first between partial payment, final payment, and the latter, I suppose, would encompass what we have here. But there is a difference. And where you have final payment, or at least payment that you think is final, that's when the clock is going to run. Is that final payment just determined by one party? In other words, just by writing that note on the memo line, is that sufficient? It is, Your Honor, according to the UCC that we put before you. If there is a bona fide dispute, I can't just take that check, put payment in full, and send it to the guy who owns the lien on my car. That's not going to work. But if there were a bona fide dispute, as the statute suggests, then that payment is final. Doesn't bona fide dispute infer that it's a question of payment? Yes, sir, it does. However, in this case, I think because of the pleading issues, it has become a question of procedural law. Because here at the affidavit of Mrs. Moore says, I corresponded to these guys, called these guys. Yes, but she didn't give any dates. She didn't give any dates in that affidavit as to when she did all of this stuff. You know, Judge, quite frankly, you could have gone through all of that, but the statement stands for itself. She had correspondence. She had phone calls. She doesn't even say in the affidavit what the dispute was. Does she need to? Maybe if the plaintiff had come back and properly answered the motion to dismiss, they should have come forward with an affidavit of some kind. One, we didn't notice the payment. Two, there wasn't a dispute. Whatever you want to raise in terms of she said it. But the amount wouldn't be adjusted according to her affidavit as she was going with them. They never came to an amount that they agreed, so she just put final payment. She did. And you'll also notice that that check is for a specific amount of money. There's pennies included in there. Along the way, she had formed the conclusion that that was the amount that was owed pending their dispute, but she apparently agrees that there was a balance, and in good faith paid the balance that she believed was not. Which was $2,568.72. Correct. That amount to her wasn't in dispute, but there was a dispute. So there was no agreement as to the dollar amount that was due. There was a bona fide dispute as to the dollar amount. Correct? Yes. Absolutely. Certainly. That is an underlying fundamental fact of the case. Well, what's important here, you see, I think the case in some ways gets off on the more interesting issue, but the check and whether or not the payment notice was conspicuous enough, or how dark is dark? I mean, how much do you have to put on there? The UCC just says all you need to do is put a notation. And as we know in commerce, you run the risk constantly that the debtor will put payment in full on a check. Where there is a dispute. And if you aren't vigilant, you're stuck with that. Who? Who's stuck with it? The creditor. If there is a dispute, a bona fide dispute, and I put payment in full on this check, and they run it through the machine. So you're saying if they accept the check, then they're stuck with it. They are. And let's understand, yes, that's true. Again, the Uniform Commercial Code referred to in our brief further states that, oh, by the way, Mr. Creditor, you have 90 days, by the way, to send them back their money and reinstate your possibilities here. The question that we really have, we're framed by the appeal, is when does the period of limitations begin? Now. What's your position? Well, the position is, I think in the law clearly, Your Honor, is that the date of last dues. How could that be? I mean, how was then the plaintiff aware of a future delinquency? So if you say, okay, I'm going to go on the day that it was last used, which was December 21st, right before Christmas. So that's the statute of limitations. But when is the payment due? And when does she not make the payment? That's when she's delinquent, correct? Well. Not when she made the last purchase. Your question suggests that there is no particular time set for me to make my payment, that I could make my payment 30 days or 120 days or two years from now. I think the problem with your question, Your Honor, is that, and I wish I had some law for you, but isn't that amount due right away? Now, I know the credit card statements say you've got 30 days to pay it back. In contrast, is not my obligation to pay you immediate unless we have. No. No, that's the whole reason why you have a credit card. If you could pay it immediately, people wouldn't use a credit card. They'd use cash, or they'd use a debit card. But they use a credit card so that they can pay it somewhere down the road because they don't have the money. Isn't that the way it is? No. Okay, so that's not why our country is in a credit card debt than it is. Because everybody has cash, and they just choose to use a credit card. They choose to use a credit card. A credit card is a matter of choice. And credit cards started out with, all of them started out with, the you-shall-pay-me-in-30-days idea, going back to American Express, Diner's Club, and a couple of others. If you think right away, there was no deferred payment. That was another invention of Visa. But what you have here is people use credit cards, Your Honor, for convenience, whether it's convenience to defer that payment or just convenience because I don't have to be pulling out cash. And I don't have the money, which is why back in the 50s and 60s you didn't have credit cards because people, cash was king. Cash is inconvenient today. Okay, well, that's a whole dispute that we've been going on. Can you distinguish the Portfolio Acquisitions case versus Feltman? Are you aware of that case? The Portfolio case? Yes, I'm aware of that case. I just can't think of it at the moment. But the case that I want the Court to focus on, of course, is the Gordon case against, Garner case against Harris. I think the Portfolio, I should know that judgment. I'm sorry, I don't. The Portfolio case basically says that the credit card, it's an oral contract and subject to the five-year statute of limitations. And it changes regularly. The statute of limitations changes regularly because the payment due changes regularly. Same thing with the St. Francis Medical Center versus Vernon. How do you distinguish that case? The problem becomes is that the last payment doesn't help you. It does or it doesn't? It does not help you. This case is the difference between partial payment and final payment. Let's understand that going forward. But when you use the credit card, that's when the contract to pay is made. And that also occurs, and we use that rule, so that when the credit card company decides to change its terms of agreement, how do we know that you've agreed to that change in terms? It certainly seems unilateral. I get some notice in the mail from American Express saying they've changed the terms of the agreement. How is a new contract made? How do I accept those new terms? By using the card. That is the acceptance of the contract and the agreement. And so, as such, the date of use becomes seriously operable, even for the credit card company's own use. But don't you use the credit card when you also make a payment because you are making a payment pursuant to the changes that have occurred? I mean, it's the same thing. It's just you're not buying something. You're giving something back that you owe. Isn't that a use? Not of the card. It's a use of perhaps the system. Well, doesn't the card represent the credit that you have, and you are paying back on that credit? The period of limitation starts when you use the card. That's the date we have. There is no agreement. The credit card agreement is not an issue. What case do you say states that? Ma'am, the Garner v. Harris Trust case is referred to in our brief. There are others, but we try to avoid string citations. And in that case, it's specifically held that last use was the operative moment that we look to for application of the period of limitation. So what is in issue here is not the partial or final payment. The problem for the defendant is that the issue that they raised in their complaint, and if you review my motion, I raised the issue of the period of limitations and also that payment and dispute. That was done not only to show when the last use was made, but when the last payment was made and that that was a final payment and would have forestalled other issues. Defendant could have come back on that motion with an affidavit to the effect that there was no bona fide dispute, to the effect that there were no phone calls, and then put all of that in issue of payment. They didn't do that. They should have, because that affidavit stands unrefuted. They don't refute one thing about that affidavit. They don't refute that it was made. They don't refute that there was a dispute. They don't refute that the check was marked final payment. And as such, if we look at the procedural way of approaching this case, the trial court was correct, because all it had in front of it was when does this period of limitations begin and when was the case filed. Now, when we bring in, and we did argue, you can't say we missed it, we did argue in the motion that the check was marked final payment. We did argue that notwithstanding the period of limitations, this check was a final payment. I believe, at least certainly I would have, come back as the plaintiff and given some reputation to that possibility, because as the trial court had before it was just the dates and the last holding, if you will, that the use was the operative date rather than the payment. And if the trial court held that use was the starting date, that's what she had before her. But the case that you cite, and I did remember reading it, the Garner case, is a 1982 case, and there were several cases that came after that, one being the St. Francis case that ruled the other way, and it was a 1991 case. So did you check these cites to see if they were overruled? No, they aren't. The St. Francis case and the Department of Justice case is not overruled. What they are standing for, though, is, if you will, focusing on the payment and the partial payment. See, what happens with the cases that have been provided to you by the Avalon are factually different. One of those cases has somebody making a promise in a will. Somebody has made promises somehow. A partial payment will probably reset the period of limitations. But this is a final payment, and there is a grand payment difference between the two. Thank you. Any questions? No. All right, thank you, counsel. Mr. Borzen. Thank you very much, Your Honor. Just a few quick points to rebut Eppley's statements. Eppley just left off by saying that we, the appellant, cited a case regarding a will to make our arguments and disputed the applicability factually in this case. Unfortunately, counsel got that backwards. It's actually the case that you're referring to is Paheto v. Paheto, which Eppley cited in his brief, which we make the point that it is factually opposite here. Now, what counsel did state and emphasize is the difference between a partial payment and a final payment. And his emphasis, as is in Eppley's brief, is that there is a final payment here, and that that final payment thus constituted a bona fide dispute under the UCC. Notwithstanding the fact that counsel did admit this wasn't a question of fact, he also stated that CACH could have come back in its response with an affidavit regarding the bona fide error. However, that is not the case because the bona fide error, in fact the term bona fide error, was first brought up, and the UCC was first brought up on this appeal for the first time, and although they did state admittedly in her affidavit, Eppley states that she believed this was a final payment, there was a difference between a bona fide dispute. I'm sorry, I said bona fide error before. I meant bona fide dispute. There's a difference between a bona fide dispute and a debtor's subjective belief that they are submitting a final payment. And with that final payment that she alleged that she made, there's unanswered questions. What balance was sufficient? What was the use here? Why? Why was this balance to her sufficient? What was Citibank's perspective? All these questions are left unanswered because the trial court unjustifiably dismissed without prejudice. We don't get the answer to this. The facts don't bear themselves out despite all these questions of fact that remain, and the reasons to question the facts remain. The reason that the trial court denied CACH's and Eppley's ability to bear out these facts is because they got the law wrong. And any emphasis on the usage of credit cards, creating individual contracts of pay, that again goes toward what Eppley made the argument in the underlying motion to dismiss briefs. That goes towards CACH's ability to plead an account stating claim, which the court ruled that appellant, that CACH, made an applicable and a fine account stating claim. That wasn't a basis for their denial, or I'm sorry, for their granting of the motion to dismiss. The only basis for granting the motion to dismiss was the statute of limitations. And the commencement date of the statute of limitations to the trial court was the date of last card use. And what you fail to, what this court does not have in possession for it, is any case law applicable or any arguments supported by precedent set forth in Eppley's brief or in oral argument today indicating some connection between the UCC arguments and the trial court's conclusion of the last date of card use as the operative date. Now, again, this bona fide dispute in the definition of the UCC is different from her subjective belief of payment of some sort of a certain amount is enough. And by making a payment, which, again, we don't know where the $2,500-odd or her total comes from, but making a payment of $2,568 towards the ultimate debt of $6,545.23 is acknowledgement and admission that, in fact, there was a debt due. There was a debt to some date owed and existed. But regardless, Your Honors, that has nothing to do with the commencement date for statute of limitations. Well, he raises this issue, and I don't believe it was raised at the trial court level. He's saying the only way that the statute of limitations is told is if a partial payment is made. However, in this case, she made a full payment. Therefore, it doesn't tell the statute of limitations. Thank you, Your Honor. If I may just answer the question briefly. The appellee's argument is that, yes. However, what she calls a final payment is not, like, it does not bear out with the facts of case. She readily admits that there was a total debt due that was different from what she believed and what she called her final payment. So, ultimately, what is necessary and what is appellee's burden under the UCC and under the bona fide dispute section, which appellee relies completely on, is her duty, it is her burden to establish a mutual value requirement, the mutual requirement of satisfaction of Citibank's understanding of this actually, the check being a final payment, and also, as admittedly, appellee did, I guess, acknowledge that this amount written in the check was her subjective belief. There is a bona fide dispute. Exactly. However, the second element and the other side of the coin of that bona fide dispute under the UCC is a burden for appellee to prove that Citibank also believed this satisfied the debt. And that has not been bared out. And also, that is not in the record anywhere that was before the trial court. What was before the trial court were the facts for which they applied the wrong law to. And the law here and the law that stands and that is long-standing in Illinois is that payment towards the debt is the applicable date and the operative date for the tolling of the statute of limitations. And for this reason, CACA respectfully requests that Your Honors reverse and remand the trial court order. Thank you so much. Thank you. All right. Counsel, thank you this morning for your argument. We will take the matter under advisement. We're going to stand in a short recess pending our next case. Thank you.